OK, when you're ready. May it please the court, my name is Ben Patterson, here on behalf of Appellants Vietnam Veterans of America et al. I would like to reserve two minutes for rebuttal. Unless the court has a different preference, my plan is to start with our appeal concerning medical treatment, and then transition to discussing the Army's cross appeal, hopefully anticipating the court's issues, and then address anything else in rebuttal. OK, I assume that's right. I mean, we had an appeal and a cross appeal, but he goes first, you go second. He saves time. Do you want time afterwards? Because it may be that you're presenting your appeal, and he may be responding. So we may give you a chance if relevant. OK, go for it. Thank you, Your Honor. The issue on our appeal is a straightforward question of statutory construction. Shall means shall. That is the well-established legal principle the district court failed to follow, and thereby committed error. Congress could not have chosen stronger words in the Administrative Procedures Act than shall to indicate its intent that its command of the courts was mandatory. There is no intent, there is no indication, that Congress misused shall to be permissive, to be a suggestion. Rather, as the Tenth Circuit found in Forrest Guardian's, it is mandatory. Therefore, once the district court had reached the point that there was an unlawful withholding of agency action, and the Army admits that it is not providing medical treatment as required by Army Regulation 70-25, once that point was reached, the district court did not have discretion under the statute not to order the Army to act. But the district court's answer to that is, in actual consequence, the VA is providing what the Army would be obligated to provide, and therefore, you lose. What's your response to that? Well, Your Honor, I have two responses to that. The first is a legal one, and the second one is a practical one. The first one is, under the APA, there is no remaining discretion for the court to consider that. The VA is legally irrelevant to the analysis. The APA is meant for the agency. It doesn't talk about the Army. Well, Your Honor. It's a generic statute. So I guess that this is the part of the argument that I'm having trouble with, so help me. Yes, Your Honor. So the purpose of the APA is to ensure that agencies are following their legal obligations. It sets down certain requirements, sovereign immunity waiver, for example, and once you reach a point in which you have a nondiscretionary, discrete legal obligation that is being unlawfully withheld, the APA says the court shall compel it. So the fact that another agency might offer something somewhat similar to what's being offered does not relieve the Army of its obligation to provide medical treatment under the regulation. And I believe this is consistent with the Supreme Court's ---- I don't understand that, because what the district court ---- this is my problem. The district court said Congress has decided that the VA is to provide these services. So, oh, go ahead, Your Honor. Okay. And so I am not understanding where you get the obligation enforceable against the Army. Well, it's derived from the Army regulation. Congress did not mandate that the VA must be the exclusive place where veterans must go for medical treatment. In fact, the Army provides treatment through its medical facilities, through the TRICARE system the Army administers to other veterans. For example, medically retired veterans, career service veterans. This is just another subset under an Army regulation entitled to care. Now, let me look at what I think is your basis for arguing that the Army has an obligation, and that is ---- I'm on ---- it's ---- oh, I lose track of all this. It ends with a K, 3-1-K. Is that where you're saying the obligation comes from? Volunteers are authorized to all necessary medical care for injury or disease approximately as a result of their participation. So that's the source of the obligation on the Army. It is the regulation as a whole. That is a key provision. There is an additional provision I would point the Court to, referring to the Surgeon General's obligation to have medical follow-up to ensure that long-range health problems are detected and tracked. So those are the two main provisions from the regulation. Point me to the Surgeon General. I know where the duty to warn is. Where's the Surgeon General language that you're talking about? I believe it's on one of the earlier pages of the regulation, Your Honor. OK. OK, Surgeon General, I've got a comment on ER-157. OK. Yes. So this would be 2-5-J, and it says, Direct medical follow-up, when appropriate, on research subjects to ensure that any long-range problems are detected and treated. So that provision, combined with the other provision concerning the authorization of medical care, is where the non-discretion duty is derived from. It's also derived from the regulation as a whole. Is it not important? No, no, I want you to stop right there. So if I read that to say that the Army, by regulation, has undertaken the duty to provide medical care for injury or illness resulting as a proximate cause from the participation, then your argument follows. I don't understand the government to be arguing that the Army does not have an obligation. I think I understand the argument of the government to be that it does have the obligation, but it's fulfilled because the VA is taking care of it. Your Honor. I can respond later to say I misunderstood, but I understand that the government is not objecting to your conclusion that the Army, by this regulation, has undertaken this duty. Your Honor, I would actually respectfully disagree with that. The Army, throughout this litigation, including on this appeal, takes the position it has no duty to provide medical treatment to the police class of former test subjects. And we have admissions through discovery that they have no agreement or understanding with the VA for the VA to be providing care on its behalf in some compliance with the regulation. I understand that the government can make its own argument. But so the government is saying the provisions that we've just looked at in this AR, Army regulation, provide no obligation on the Army to provide medical care? Apparently, Your Honor, that is their interpretation. Well, the district court, what is your understanding of what the district court held here? The district court held that the regulation requires the Army to provide medical treatment for health problems related to the testing program. The district court reads it to impose the obligation. Yes, Your Honor, it does. And despite that finding, and despite the Army's admission that it's not providing that medical treatment, the district court refused to enjoin the Army to act. And that is the legal error that violates the shall-mean-shall principle of the VA. And there's nothing in the record, as far as I can tell, that shows that the Army has authorized, asked, directed, requested, hinted at anything to the VA. Listen, we have this obligation that you take care of it for us. Exactly. Is there anything in the record that I can see that the VA can step forward and say, we assume this obligation even without your doing it. Well, the VA does what the VA does under its own organic statutes, regulations, and so on, without regard to any obligation that might be imposed here under this AR. Exactly, Your Honor. In fact, the record is the opposite. Okay. Help me again with the obligation is established. I somehow get mixed up with these things. I somehow thought that the critical language was in the passive. In the passive. I'm sorry, Your Honor. There's nothing that says the Army will provide. I thought it said treatment shall be provided or something like that. So the regulation read as a whole is referring to the commanders within the Army. It's Army regulation, and it's referring to the authorization of medical treatment for proximately caused health problems. So reading the regulation as a whole, it creates an obligation on the part of the Army to provide that medical treatment. And it's important to keep in mind why this regulation is so important. The Army was performing these tests and these experiments on these veterans, on these they were currently active service members. It wrote a regulation requiring it to provide them with medical treatment. At that time, the VA existed. The VA was in place. Active duty service members also are already entitled to medical treatment while in service anyway. It makes sense to keep them in combat readiness, for example. So the regulation has to be read to apply to former test subjects for the provision of medical treatment for when they have health problems. That's the most logical reading of it. Otherwise, the Army's interpretation of it is unreasonable. It renders the regulation surplusage, meaningless. So the regulation has to mean something. It has to apply to someone, and it applies to this class of former test subjects who were a part of deliberate exposure experiments, exposed to substances like sarin and VX and mustard gas, things of that sort. If they have health problems, the Army has set them aside as a special group to provide them with medical treatment through their own system. This does not involve restructuring. They have their own hospitals, their own TRICARE system. It's just another class of veterans through an Army regulation who are to be provided with medical treatment. And despite this, and despite the Army's admission it's not doing so, the district court refused to enjoin. And that violated the principle from the APA that once you have an agency action unlawfully withheld, it shall be compelled. With your shall be shall is an interesting argument. And I was sort of leaning towards it, and then I reread Justice Scalia's opinion with the South Utah and Judge Bybee's recent Hills Canyon. And it seems to me that there's a problem upon a problem. If we were in many of the countries, other countries of the world today, this would be an administrative tribunal. And you'd come here and we'd have the duty to straighten up the administration. We've chosen as a country to go a different direction with these agencies. And so there's a restriction put upon the court and what we can do. And that restriction is outlined in those two cases. And I'm having a great deal of difficulty determining why it is that you believe we could, as the cases require, find this discreet area where we could mandamus the Army to do something. Unless we can do that, we have to back off and let somebody else handle it. We will not become what Justice Scalia calls the supervising court. So I'm sort of a little more open for suggestions now. And it deals primarily with those two cases, which indicate judicial restraint. And they even refer to judicial restraint. Keep your hands off the agencies. Let them work it out. How do you respond to that? Yes, Your Honor. The first thing I would say is that the APA and mandamus, traditional mandamus, are two separate things. APA is statutorily created. It does not have discretion for the court. But to your main problem, your main question regarding Norton and also Judge Vibey's opinion in Hell's Canyon, the question goes to, is the court interfering in the day-to-day operations of the agency? That is for me to say. That is for me to say.  That is for me to say. That is for me to say. The question is, can we issue mandamus? You've rephrased it, but could we issue mandamus to tell them to do this? Well, yes, Your Honor, you could. Maybe I should clarify. The important difference Is it asking for mandamus? No, Your Honor. This is an APA cause of action. And because it's not mandamus, because it's under the APA, Congress has said that courts no longer have mandamus discretion not to act for various equitable reasons. Because it's an APA cause of action, therefore, courts shall compel. And the way that Justice Scalia refers to it and also Judge Vibey refers to it is a comparison. This is not a question of restructuring the agency. It's not a question of the court getting involved in the day-to-day operations. It is a discreet, prescribed legal obligation. The court is not being asked to interfere with the agency's rightful discretion to decide how to do this. But we have an Army regulation with mandatory language, using words like obligation, duty, will. The Army must act. It does not have discretion not to exercise its discretion at all. So with that in mind, the court is not impermissibly interfering with the agency. It's just ensuring that it fulfills its legal obligation that it says it does not have. You know, why don't we do it this way? I'm inclined to restructure the argument. That's your appeal. I'd like to hear from the government in response directly on this appeal, then your rebuttal, and then let's have the government bring its cross appeal. Let's do it that way. Because I think we can keep our arguments cleaner, because this is one argument. There's another one coming. So let's hear from the government. You took about 15 minutes, and we'll give you a minute or so to respond. All right. Thank you, Your Honor. And we'll deal with the second question as an appeal from you. Okay. May it please the Court. Charles Scarborough for the Federal Government Defendants. With me at council table is Joseph Masterson from the Army. I would like, even though we're subdividing the argument, I would like to start with the basic point that Judge Wallace was making, which I think goes to both points here. It's that the Supreme Court has made very clear that claims under Section 706-1 are a unique species of APA review, and they may only proceed where an agency fails to take a discreet action that it is legally required to take. And the Court went on to emphasize, as you were pointing out, Judge Wallace, this is a very demanding standard that reflects significant separation of powers concerns, and it's designed to protect Federal agencies from judicial interference and to prevent courts from becoming entangled in abstract policy disagreements about what an agency should do. So it's all true, and courts order performance under 706 all the time. That's correct, Your Honor. When there is a discreet thing, and it's usually, again, it's hard to characterize all the cases, but it's usually like you must promulgate a regulation within 12 months. And so that's – it's a – it's a – Well, I guess, you know, we got them. We see them all the time. It's things like that. It's not sort of these broad, programmatic things like providing medical care, particularly when you have all – But what's so hard about broad, programmatic medic – I mean, you've got to provide medical care. You've got to provide – you've got to pay judges their salaries wrongfully withheld. I mean, that's not broad and programmatic. It's just, hey, you've got to provide medical care. There are all kinds of – well, again, what the inquiry is, is you need to go and find a statute or regulation that says you need to do this. And so I want to clarify what you – what you were asking for, is what is the government's position as to this language? The language that – that has been focused on is, as you were saying, Section 3.1.K. And I think it's really important to focus on the actual language. Judge Schroeder, you pointed out that it's in the passive voice. It is. I want to read it. Volunteers are authorized all necessary medical care for injury or disease that is the proximate result of their participation in research. And it's very important to understand where this fits in. It's in a reg that is guidance to commanders on the ground who are going to be running these tests, basically. And it is – the Army has always interpreted it as being – that you're going to provide care to you during the pendency of tests. In other words, if we overexpose you to some sort of substance and you have a medical problem, we're going to give you care. And that's to make clear that this is what you were supposed to do here. It is not. And nobody – Congress, the Army – nobody until this litigation has ever suggested that it is something that displaces and for all time allows people who have been exposed to these tests to get care from the Army instead of the VA, which is what Congress has assigned through the scheme. Now, do you argue that this does not command that medical care be provided while these people are still on active duty? It's – the construction is that it means that you are providing medical care during the pendency of the investigation. In other words, when you're doing the test, when you're involved in the test, you're providing medical care. The counsel made reference to the fact that this is – I'll stop right there, then. So you're saying that – let's say I'm in the Army, I volunteer for one of these tests, and during the test I don't need any medical care.  If I'm coming down with some very serious condition as a result, you're saying that this does not apply? I'm saying – well, in that situation, I think you would be entitled to medical care from the Army regardless, because you would be still an active service member. The question here is whether, once you have left service, this reg – Just stop for a minute. Okay. So you're saying that I'm entitled to medical care as a result of this thing, even though it's a year after it happened, so long as I'm under the field? No, I'm trying to actually segregate the as a result of. I'm saying you would be entitled to medical care anyway, because you're still an active service member. Well, if that's true, what the hell is this doing? Because why would you even say that if they're entitled to medical care? Again, that's the argument I was going to turn to. That's the superfluous argument here. And I'll get to that. But it seems to me that the superfluous argument runs against you, because if I'm entitled to medical care so long as I'm on active duty, this is totally unnecessary, because it's – I don't think so, Your Honor. And again, part of it is the context of the regulation. This is to make clear – it's a belt and suspenders approach to make clear that we're going to give you medical care when we're doing this, when we're doing tests here. There are additional provisions underneath K that talk about how you don't have to pay for certain costs. Medical costs for certain categories are waived and things like that. It does independent work. And the threshold thing that I really want to point out, and I want to get back to because we got sidetracked, is that it is not clear that any of this applies retroactively to past tests. That's a critical finding by the district court at Excerpt of Record 44 that it's not clear whether AR 7025, the 1990 version, applies in any way to the tests that were conducted many decades ago. It is a forward-looking thing. And again, you understand that because this is – the Army has basically been bulking up its regulations about testing subjects and prescribing with, I think it's fair to say, greater degrees of specificity and care what will happen. And that's exactly what was going on here. In fact – There's a charge that that was a litigation decision. A litigation decision? No. I don't think there's any charge that there's a litigation decision, that the regulation was promulgated as a part of a litigation decision. No, the approach. I don't think so, Your Honor. Let me ask you another question that's bothersome. And that is your issue that it applies only to the future. That leaves prospectively possibly some veterans out because under the scheme you have now after their discharge, the Veterans Administration will take care of it. But if a person is discharged for less than honorable reasons, the Veterans Administration, as I understand it, does not provide. So you may have a person who's been tested, is now out of the Army, can't get anything from the Army because you say we're not going to do that, can't get anything from the Veterans Administration because they were discharged for less than honorable conditions. That's correct, Your Honor. But I mean, that's an argument that goes to Congress's decision about who is entitled to care. That's not sort of something that informs, you know, in construction of the regulation here. I mean, the district court properly understood the question as being can you make an end run around the scheme that Congress has assigned to provide care, which is clearly the VA in these circumstances. Can you make an end run by saying that that scheme is somehow inadequate or it is limited, as you were saying, to, you know, people who are less than honorably discharged? The position that you took in the district court, the same as you're taking here with respect to the duty to provide care that is being undertaken by the VA? Yes, Your Honor. I believe it is. I mean, it's the two things. It's a forward-looking duty. And again, it's just important to understand that I know the regulations are very complicated and I don't want to get too weedy here, but the 1990 version of the regulation is the only one that's the applicable one here. Prior to the 1990 version, there were the 1988 and 1989 versions, and they contained actually an exemption that made clear that this couldn't apply retroactively to these sorts of tests. That's interesting. If they've taken it out, that suggests something to me. Well, but the point is, the point is that there was no practice along these lines, and we went through in our reply brief and really tried to explain sort of how that in our view, in the wrong place, you know, it was a mistake. But at the same time, it's consistently the position that this is something for during the pendency of the test. So as to answer your question, Judge Schroeder, it's that it's forward-looking and it's for the pendency of the test, and that has been a consistent position throughout. And the just ---- I'd like to follow up on Judge Wallace's question. One of the ways you read any statute, regulation, any legal document is in a sort of a commonsensical way. I have trouble thinking that it's commonsensical that the Army would say to these guys, we will provide medical care for you as a result of these potentially highly dangerous experiments for which you are volunteering, but if for some reason you get a general discharge, forget it. Well, again, Your Honor ---- That's a pretty cruel thing for the Army to do. And I don't think the Army is a cruel institution. I agree with you 100 percent on that. And I don't think that's what the import of reading the reg in the way that we construe it is. That's just the way you said you do read it. No, but the import is not that you're out of luck and you get no medical care. The import is that you go, like any other veteran, through the VA scheme. And that's what the district court ultimately understood. You get no medical care from the Army. And, I mean, I don't want to rely too heavily on my own experience in the military and so on. The VA doctors and facilities operate very differently from the military hospitals and facilities. And if I'm asked, do I want to be an active duty serviceman being treated by my service, or do I want to be treated by the VA, the answer is very obvious to me. Okay. I think my response is that Congress has spoken on this issue. And that in this area, to the extent there is any ambiguity at all, and the district court found there was ambiguity as to whether this reg was prospective and whether it was, you know, during dependency. And the district court went on to look at plaintiff's construction and our construction and discard the Army's interpretation of its own reg, which was not a proper thing to do, just under general agency principles. But particularly in the 706 context, once you find ambiguity, the inquiry should have been over. You don't then go and say, you know, which is more persuasive. It has to be a discreet and mandatory duty, something that is legally required. Let me ask the question this way. Let's assume you don't have to concede it, but let's assume that the district judge is right, that the language here in this AR, AR, what's the number, it's 7025, does impose upon the Army an obligation to provide medical care for those who are suffering injuries or illness as a proximate cause from this experimentation. Let's assume that there is that duty now imposed upon them. If that is so, is it sufficient to discharge that duty to look at the VA, which is independently and for reasons based upon the VA's statutes, providing overlapping medical care? Yes, Your Honor. And that's Why is that so? Because it's a permissible exercise of discretion here. And we cite the biodiversity case in this Court for that, that even if you find a Discretion. A district court's discretion. I mean, their argument is shell means shell. In other words, upon finding a violation, and I'm taking this all for purposes of your hypotheticals. I don't want to fight the hypothetical. Assuming the district court properly found this, which we do not concede and I would like to return to later, the district court, yes, was entitled as an exercise of its discretion in determining what is the appropriate relief here, especially in the Section 706 context where there are these separation of powers concerns about, you know, getting involved in agency programs and forcing to provide care where they haven't clearly said that they were going to do that. The district court said, no, I'm not going to order the Army to do something that the VA is already doing. And yes, that is perfectly permissible. The primary case that we rely on, and there are lots of cases like this, is the biodiversity case, which was a Section 704 case in this Court, which found a statutory violation. And the Court made very clear, but you still have lots of discretion in sort of how you deal with that violation. I don't understand how that can be right if we assume that the Army has the duty. I don't understand how that can be right if the Army has the duty and the Army has not instructed the VA to perform the duty or the VA has not stepped up and said, I am performing the duty on your behalf, but the VA is operating under quite a different set of statutes, assumptions, and regulations. So, yes, it overlaps. I get that. But they're not doing what I'm assuming the Army is required to do, which is to provide medical care for all illness and injury proximately caused. They are doing precisely that, Your Honor. There's, I mean, yes, that's what the VA does. You're looking at a different VA and comparing it to a different military hospital system than I'm looking at. Well, Your Honor, I think that maybe there's the error. And I do want to return out of the hypothetical eventually and fight the duty to find it, because I don't think the district court made a proper predicate finding on that. But still, with this hypothetical, trying not to fight it. The inquiry is what did Congress say? It's not and even when you get into the Section 704 context, when you're talking about the adequacy of the remedy, and I don't the district court didn't rely on that ultimately in its decision. So I don't want to fight it and have a Section 704 battle. But you don't look at the adequacy as in actually testing which is a better thing. You look at what Congress has set up. The scheme that Congress has set up clearly says veterans go to the VA for medical care. Well, but that is a generic scheme. It's not – I mean, it's set up independent. It's the overarching comprehensive scheme. Yes, but it's not set up with the purpose of fulfilling this particular duty, if they're assuming there's a duty. Well, again, that's where the argument gets a little bit circular, because now you're talking about a particular duty and I'm not sure exactly what you have in mind. And so can I return – can I jump out of the hypothetical for a minute and return – well, I'm not trying to get away from your question. I'm saying that it depends upon your conception of the duty, and there was no finding by the district court at any point in this case that looked at the language of the 1990 version of this provision that we read at the very beginning of my argument and said, I find that this is a discreet and mandatory duty. Instead, and I've looked at all the district court's decisions throughout this case. Instead, the closest thing that you have is the district court in an earlier decision at the supplemental excerpts of record on page 82. This is the extent of the district court's finding. It cited the 1962 version of the reg. It said that the language that it was responding to, the government's argument, this was limited – medical care limited to the pendency of the testing. And it said the language, quote, does not require this conclusion, then basically rejecting the government's argument. That's not something – it does not require, is not the proper standard to be applying under Section 706. It's got to actually require it. So in other words, the district court applied the wrong standard. It wasn't using the mandamus standard. And then it went on and cited Section 702 for, you know, the sort of the idea that it could review this area. So in other words, the district court – I think we've got the government's argument in hand. You've had 16 minutes. Sorry. If you want 30 seconds to sum up, but then we'll get him rebuttal, and then we'll move to your appeal. I don't want to beat a dead horse on the medical care, so I'll return with the notice claims. Thank you. Two minutes. Two minutes for rebuttal solely directed to the question that we've been arguing. Thank you, Your Honor. I want to address just a couple of issues raised by the Army. The first, his reference to the 1988, 1989, the summary of change, what they're calling a mistake, I do want to briefly address that. It was raised on reply for the first time. If you read the summary of change, which is in the Statutory Addendum 149, you can see that the reason for the change, as you picked up on, Your Honor, was to correct the mistake, that the deliberate exposure provision, which was mistakenly put in the exemptions provision, which actually uses the word, this type of vehicle testing is exempt from informed consent, was removed to the exemptions. So that's the correct reading of the reg. I also want to just briefly talk about the VA system to some extent. Congress in August passed new VA legislation, and as I'm sure you all are aware, there have been serious problems with the VA, long wait times, serious issues, wait lists, things of that sort. In this new statute, Congress actually specifically requires the VA to send veterans who are waiting for care to the DOD, along with other agencies, for medical treatment there, so they can actually get timely treatment. So this further undercuts the argument from the Army that Congress somehow made the VA the exclusive place that you had to go for treatment. And unless the Court has any other additional questions on our appeal. We're finished with this question, so I apologize for rearranging the force of the argument, but it seems to me that it's better to keep them clean and we can, okay. Now it is the government's cross-appeal. Is it possible that we can confine this, let's give you 12 minutes, let's see if that works. I'll try to sit down earlier if I can. The same basic standards apply to finding a notice, a duty to warn here. The same stringent standards and the same fundamental defect is present in their Section 706 claim as in their medical care claim. And that is the district court specifically found that it was not clear, I'm not making this language up, and excerpts of Record 44, not clear whether AR 7025 even applies to testing programs conducted prior to 1988. That really should have been the end of the inquiry. You don't, under 706, you don't ask whether this side's interpretation is more persuasive than the other side's interpretation. You just don't engage in that inquiry. Scalia. You're arguing to us and you have to convince us that it's not clear. Gershengorn That's correct, Your Honor, and I will then now, but I think it's worth emphasizing that the district court, as a threshold matter, found that it was not clear. But, however, so let's go again, as we stuck with that, again, so let's turn to the relevant language. And the relevant language here is a provision, again, sort of in, you know, a regulation that's to guys in the field who are performing tests, experiments, that says, I quote, from section 3.2.H, duty to warn, commanders have an obligation to ensure that research volunteers are adequately informed concerning the risks involved with their participation in research and to provide them with any newly acquired information that may affect their well-being when that information becomes available. So you have something that is, sort of by its plain terms, tied to sort of making people understand when they're signing these voluntary agreements to participate in the tests that they, you know, there may be risks involved in the tests. And the regulation continues, this is the language that the plaintiffs focus on, that the duty to warn exists even after the individual volunteer has completed his or her participation in research. That's where they stop, because that's what they say means the duty to warn is sort of an ongoing thing that you have to keep on going. But, of course, there's another sentence after that, and it's to accomplish this, and I don't want to read the whole sentence, but it's basically. I'd like you to read the whole sentence. Okay, right. Please do. So basically, you have to set up databases. You have to read the sentence. Okay. Okay, you were going to say something about it. The MACOM, Major Army Commands, or Agency Conducting Sponsor. No, no, no, no, please. To accomplish this, comma, just read the sentence, the MACOM, or Agency Conducting or Sponsoring Research, must establish a system which will permit the identification of volunteers who have participated in research conducted or sponsored by that command or agency and take actions to notify volunteers of newly acquired information, CA above. And the point here is that this is a forward-looking thing that the Army is, and this is something that, you know, the Army is doing in 1990. This is not in the earlier versions, the 1962 or 1974 versions, that they're doing to set up a system based in part upon, you know, what they've learned about how hard it was to go back and try to, you know, figure things out in advance so that you can have a system to notify. And it's a prospective thing, and that's what the district court recognized when it said, it's not clear that this is a, whether it goes back retroactively or sweeps forward. And normally, when you construe a reg, you look at the effective date and things like that. And this is an effective date of 1990. And you think, okay, well, that's a forward-looking thing, absent some indication of retroactivity. So we think we win just under a pure construction of this regulation, which normally a court would defer to the agency's construction of its ambiguous regulation. But our point then, the larger point is that to the extent there is any ambiguity, it's not something that is enforceable under Section 706. And practice bears this out. Nobody, Congress, you know, the Army, the plaintiffs, up until this case thought that there was this duty to notify. The plaintiffs, in fact, in circulars to their own people, the Vietnam veterans of America, sent things, and I'm quoting from supplemental excerpts of Record 46 and 51, to their members that the VA, not the Army, has the duty to notify. Everyone understood that there wasn't some sort of rolling extra duty. And then the final point I'd like to make about this is that under Section 706, it's quite clear that you can't challenge the sufficiency of agency action. You can't do this dressed up as a challenge to agency inaction. And what we have here is the understanding is that you deny the obligation. It's not, you're not saying we're doing it well enough. You're saying we're not doing it because we're not obliged to do it. We are saying that we deny the obligation flowing from this regulation, correct, Your Honor. But we are also saying that we are doing a whole lot to notify people. And it's undisputed in the record that there have been lots of research conducted by the Army, commissioned by the Army, including a multi-volume study in the 1980s by the National Research Council. There have been notice letters sent out to people. There are ongoing databases that the Army is keeping. There's an 800 number so you can request your test files. The question is sort of how you define the duty on an ongoing basis. And the district court has a conception of that's not enough. You need to do more. You need to be more active out in the field looking for information. And let me back off for just a minute on this. And we can get back into the fine grain. I don't really understand why the Army is taking this position on duty to warn. You've gotten patriotic volunteers to engage in dangerous experiments for the good of their country. Some of the dangers were understood at the time. Some of them were not. And the Army is now saying we are not going to do everything we can. We have no legal obligation to you to inform you of what we now know about the dangers of the tests that you underwent. For example, test X produces a higher likelihood of cancer. And therefore, you should get yearly screening instead of every five years. I simply do not understand why the government is fighting this, because it seems to me such an elemental obligation of the Army, having gotten this from these patriotic volunteers. And you're now saying, well, you know, we really don't have to do this. The Army's position is not that we do not have to provide information to these people.  We have the resources to provide these individuals with all the information they have, to provide them the means to have follow-up, to coordinate with the VA. The notice letters, and I urge the Court to read the notice letters that went out. We've concluded them. Why are you appealing? Because what we have now is the district court saying what you have done thus far in giving all the information you've had, collecting all the information that you have thus far is not good enough. What I want you now to do is based on this, you know, ambiguous provision and regulation, I want you to go out and look for more information. The Army doesn't think that there is more information out there. There has been no evidence in this case that there is any information out there. There's been no finding that the Army has unlawfully withheld anything at any point. The question is simply, could the Army be doing more? And that is not the proper role for the Court to be engaged in in a Section 706. So, Your Honor, I fully agree with you that it's wrong, it would be wrong for the Army to hold back on information about this stuff. But I have to, with all due respect to your saying what the Army is doing out of the goodness of its heart, the fact that the Army – I mean, I read the district court's order. It seems a perfectly sensible order to implement the obligation that the district court found, and that the Army should be fighting that instead of just saying, listen, we might disagree with you as a matter of law, but the truth is it's a good idea, we're doing it anyway, we're not going to appeal. I have to say that I don't understand why the government is appealing to this. The other one I understand. But this has to be done. Without going into litigation decisions, it's not clear to me that absent an appeal from that side, there would have been a cross-appeal here. However, let me just say that the problem here is that the district court is assuming the role of calling the shots here on an ongoing basis based on an ambiguous reg, and the experience in district court – the Army filed a compliance plan pursuant to this injunction. We saw a stay in this court. It was denied because we didn't show irreparable harm according to the panel that heard it. Filed its initial compliance plan. The district court rejected that initial compliance plan. We pointed this in our reply brief and said, no, I need more from you. I need you to identify the exact databases that you're going to search. I need you to identify the specific Army, you know, titles of the people who are going to be involved in this increased data-gathering position. And that does suggest to me that the Army is not doing everything it can, despite what you tell me. Your Honor, again, I have to return to you're telling me the Army court is doing everything it can. But the district court clearly disagrees with you. The district court clearly disagrees with it. And the point here is that that is not a proper role for the district court to be sitting in as basically sort of the programmatic manager of the Army's ongoing notification efforts. And that is really what Southern Utah is all about. It says that you can't sit in judgment and on a forward-looking basis sort of say, you've got to search this database versus that database, and you've got to report to me about all these things. It may seem like a sensible idea, and I do not wish to appear unreasonable here. And the Army doesn't, you know, has undertaken enormous efforts in this area. However, that is not an appropriate role for the court to be doing on an ongoing basis. You're down to two minutes. Do you want to save those for later? Yes, I would like to. Thank you, Your Honor. Thank you, Your Honor. Twelve minutes. Twelve minutes. Thank you. Before addressing the Army's cross-appeals, particularly the legal arguments, I want to step back for a minute and talk about why notice is so important. These veterans, most of these experiments were done during the Vietnam War era. They're in their 60s. They need this information in order to get medical treatment, to get diagnosis, and they also need it to be able to go to the VA to get their compensation and pension, benefits, claims, and benefits. I think we all understand that, and those of us that have been in the service are quite aware of the circumstances that you're involved in. The problem is, on this particular part of the case, it sounded awful lot like Hell's Canyon, what the district court judge is doing, and where before, on the direct case, you may have a different issue. On this one, you're asking the court to manage, at least the court has taken that and you're caught with that position. Tell me how, if you were writing the opinion, you'd distinguish Hell's Canyon from this case and what the district judge has ordered. Well, first of all, Your Honor, I would distinguish it because Hell's Canyon was a 706-2 case, not a 706-1 case. It was a 706 case. Right. But it was an agency which the challenge was for the agency acting arbitrary and capriciously of use of discretion. This is a 761 case where we have a failure to act, and therefore, we're challenging that failure to act. But to get to your main point, which is to the idea of the district court supervising and being involved, the district court was careful in constructing the injunction to leave discretion over how to go about providing notice to the Army. The district court's order does not require the Army to go out and search and endlessly search and report back to the court. But if you disagree with what the Army did, you're going to have a judge you can go talk to. Well, it depends, Your Honor. We certainly hope, and I'm actually pleased from the Army's position this morning that hopefully they do not have any intention of violating the injunction should this Court uphold it, and there will not be any recalcitrance from the Army. But the key point to this is that the discretion over how to go about providing notice was left to the Army. The report that they're referring to, and this is in the record, they filed it, essentially told the district court that it was going to try to look into it, it would try to find a contractor, and we would report back to the court in seven years. Understandably, the district court did not view that as being a genuine compliance with the injunction, and so it asked for an additional report that was provided months ago, and we are here and we hope that the Army is going about its duty to provide notice. This is information the government alludes to the fact that it's had considerable efforts to collect information. So this is information in its possession. What the duty requires is that it be provided. As newly acquired information is gained, it be provided. And that is what the Army admits it's not doing, and has made clear it has no duty to do. With the order that the district judge did give, do you think that rather than an injunction, it could have been a mandamus action? Well, Your Honor, this was an APA cause of action. Now, you're the ---- It brought it as a writ of mandamus. Yes, I do believe a writ of mandamus could have been entered against the Army. Do you, Zebra? It seems to me it's kind of a striking mandamus type of action. Well, Your Honor, our cause of action is under the APA. What we had to comply with was to show that there was a discreet, nondiscretionary duty being unlawfully withheld. Yeah. The district court found that there was. There was a duty defined in the regulation to provide information to those who have participated. So you believe the district court could have said, I'm ordering you by way of mandamus to provide it. The district court could have, but that's not what our cause of action is. Cause of action is under the APA, which simply says the court shall compel unlawfully withheld agency action. Norton refers to what it means to have a legal obligation sufficient to order that. And I believe we have that here. We have an Army regulation. And you distinguish Hell's Canyon and how. Because so Hell's Canyon was a 706-2 case, not a 706-1 case. It also didn't analyze this precise issue in great detail. And we comply with it. Was it you said it was a 706-1? It's a 706-2 case, I believe, Your Honor. It says here in Hell's Angel it says it's a 706-1 case. I don't know. I mean, it's possible I'm misremembering, but I believe what the court did there is discuss the general principles of the APA. You're right. Okay. And we comply with those general principles. We comply with the discrete nondiscretionary duty. We have an Army regulation. This is not a mere goals of an internal agency which is not published and uses permissive words. This is a mandatory obligation, a regulation which uses words like obligation, duty, will. These are the kinds of things that indicate a nondiscretionary duty under the Supreme Court's precedent. And that's why the district court was correct to enjoin the Army to act, while also preserving its discretion over how to act. And that's why we believe the injunction was proper and narrowly tailored. I believe, unless the Court has any other additional questions, I don't know. No obligation to use all your time. Thank you, Your Honors. Thank you. Mr. Garbo, two minutes. With that in mind, Your Honor, I'd just like to address the sort of the back and forth that's occurred since the injunction. I think counsel said that the district court was reacting to a plan that said we were going to take seven years to do something. In fact, I'm quoting from the Army's plan here on page two that it filed. The initial plan, as described, this process includes four or five steps to locate newly acquired information, each of which will take at least several weeks. We're not talking about seven years here. The Army's not dragging its feet. The point is that the district court has reacted and said, no, no, I think you need to do more. And that may be good as a policy matter. It may be something that is right to do. It is not the proper role of a court under section 706.1. The court is now going on in its order, responding to the initial compliance plan, said that I won't accept this compliance plan that you have. I need you to do things like, and I'm quoting here from page three of the district court's order, must identify the job titles of these key Army leaders and explain what it means to have newly acquired information within their commands and area of responsibility. So, and what databases you're going to look at. So, it really is the sort of micromanagement of the notification efforts. And it's all premised on a regulation that the district court itself found wasn't even clear as to whether it was retroactive or forward-looking only. And that cannot stand. And the Army is continuing to maintain these databases and is continuing to try to and will continue to provide information as it becomes available. However, this is not a proper injunction. It needs to be vacated. Okay. Thank you, Your Honor. Thank you. That completes our calendar for this morning. Vietnam veterans is now submitted for decision. Thank both sides for your very good arguments.
judges: WALLACE, SCHROEDER, FLETCHER